## Case No. 6,076.

### HARMER v. MORRIS et al.

### [1 McLean, 44.] [1]

Circuit Court, D. Ohio. Dec. Term, 1829. [2]

EJECTMENT—ACQUISITION OF LANDS BY GRANTOR AFTER DATE OF DEED—MINORS—MAP AS EVIDENCE—BOOK OF SURVEYS—ACT DONE BY MISTAKE.

1. Symmes executed a deed for the lots in controversy in 1791, and in 1794 obtained a patent for the same and other lands, from the United States. From the date of this patent the first deed operated as a legal conveyance. A suit against the purchaser of this property on a judgment against Symmes in 1803, on the ground that he acquired the legal title, and that Symmes's deed conveyed only an equitable title, was unnecessary. The mother of minor heirs has no power to authorize an agent to act for such heirs, in matters relating to their real estate.

[See note at end of case.]

2. To prove boundary, a map which has governed in the sale of lots, and has been treated for many years by the proprietors and purchasers as the original map, may be received in evidence.

[Cited in City of Elgin v. Beckwith, 119 Ill. 369, 10 N. E. 558.]

[See note at end of case.]

3. The remarks, however, made on the map by the proprietor, are not evidence.

4. A book published by a deponent respecting the date, &c. of certain surveys, may be read in evidence, with a view to qualify his deposition. Acts done through mistake are not binding, whether done by principal or agent.

[Cited in Yates v. Little, Case No. 18,128.]

[See note at end of case.]

[Action by the lessee of Harmer's heirs against George Morris and David Gwynne.]

Mr. Caswell, for plaintiff.
Mr. Ewing, for defendants.

OPINION OF THE COURT. This action of ejectment was brought to recover possession of a lot of ground in the city of Cincinnati. The lessors of the plaintiff claim as heirs of Gen. Josiah Harmer; and they have given in evidence a deed executed by John C. Symmes, in whom the legal title was afterwards vested, for the whole of the land covered by the plat of the city. The deed

was dated the 6th May, 1791, and acknowledged the 28th November, 1804, and recorded in the same month. The boundaries specified in the deed are, "on the south on the front of River street, lying directly in front of Fort Washington, being twelve rods wide on the street, including two lots, and extending northerly from the said front street twenty rods, to the south side of the second street from the Ohio, and adjoining the said second street twelve rods from east to west; and on the east bounded by lands of his excellency, Gov. St. Clair." These lots were not within the original plan of the city. Symmes obtained a patent from the United States for the land in 1794. The defendants claim title under Ethan Stone, who purchased it at sheriff's sale in 1803, as the property of Symmes on a judgment obtained against him by Lemmon. The defendants also, gave in evidence the record of a chancery suit brought by Harmer against Stone, on the ground that as Symmes had only an equitable title at the time he executed the deed to Harmer, in 1791; an equitable title only was conveyed, and that by the purchase at the sheriff's sale, Stone became vested with the legal title; and the bill prayed that Stone should be decreed to release his title to the premises to the complainant.

This suit was prosecuted and in 1817 a decree was obtained by the heirs of Harmer, (their ancestor having deceased) for the title of Stone. But he did not execute a release in pursuance of the decree until some four or five years after the decree, when at the instance of George W. Jones, an agent of the widow and heirs, a part of whom were minors, Stone went to the ground in company with the counsel for the heirs and a surveyor, and the lots were set off as Stone directed. The surveyor handed Jones a plat of the survey, and a release in pursuance of it was executed by Stone. Mr. Jones states that he had no written authority to act as agent, and that one of the heirs, and perhaps the only one of full age, gave him no authority, verbal or written. He acted merely at the request of the widow. The witness supposed the deed of release was executed for the same lots as contained in the deed from Symmes to Harmer. The plaintiffs then proved that in 1824, an execution against Ethan Stone was levied on a part of the ground included in Stone's deed of release, but which, it is contended was not within the boundaries of the lots conveyed to Harmer by Symmes, and which was sold as Stone's property by the sheriff, in February, 1825, to one Kirby, who conveyed the same to Jones. Afterwards Stone, on being informed that this purchase was made to quiet the title of the heirs of Harmer, executed a release to Kirby. It is proved that the heirs have had possession of the premises for a great number of years, and that they caused to be erected thereon, one or more valuable buildings.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in 7 Pet. (32 U. S.) 554.]

Much evidence has been introduced in relation to the boundaries of these lots. With other witnesses, Thos. Henderson has been sworn, who states that he has heard several of the old residents of Cincinnati, now dead, speak of Harmer's lots; and among others, he recollected the names of Joel Williams and David Zeigler, the latter being the agent of Harmer, and they censured Stone for attempting to take away Harmer's property. The plaintiffs then read from a work by Doct. Drake, called "A Picture of Cincinnati," the date of the surveying of the lots lying east of Fort Washington. This evidence is admitted and also the statement of Henderson, though they are objected to by defendant's counsel. The deposition of Doct. Drake has been read in evidence in relation to the same matter, as contained in his book, and it is considered that the statement in his book may be read to correct, or in some degree qualify the statements in his deposition. The book was written when the facts were fresh in the recollection of the witness, and they were probably stated with greater accuracy than he could be expected to state them after the lapse of many years. The book is therefore not admitted as an ancient record of facts or events, but merely as the statement may have some bearing on the deposition of the author recently taken and read in evidence. The remarks of Williams and Zeigler, as related by the witness Henderson, go to establish no fact which can have a bearing in the case, and the jury will so consider them. Gest, the surveyor, was examined, as a witness, and other witnesses. The defendants then offered a map contained in Drake's book, corresponding with the plan given in evidence by the plaintiffs, except no numbers were given to the four first lots. Another plat was then given in evidence by the plaintiffs which was numbered 3. And the witness Henderson stated that that map was shown to him in 1809, by John C. Symmes, in the presence of Daniel Symmes. That he saw the map again in 1811, when the lots were numbered, which appeared to have been done by Daniel Symmes. That he then copied the plat on a larger scale, at the request of a number of the citizens of Cincinnati, and had it placed upon the records of the county. That on this plat were designated the lots, alleys and streets, of the upper part of the city, and that sales of lots were made with reference to it, and that it was treated and considered as the original plat of the city for that part which lies east of the garrison. This plat was objected to by the defendants, but the court overruled the objection, and admitted the map as evidence, with the exception of remarks made upon it in the handwriting of John C. Symmes. The plaintiffs then prayed the court to instruct the jury "that inasmuch as they claim title to the premises in dispute under the deed from Symmes to Harmer, and not under the deed of release made by Stone, they cannot be divested of their title to the lots which that deed conveyed by the possession of the premises for the period of five or six years, which they supposed to be a part of the original lots, though embraced in the deed of release, but not in the decree." This instruction was given to the jury. A deed having been given by Symmes to Harmer, for these lots in 1791 when the patent was issued to Symmes for the same land in 1794, the deed of 1791 took immediate effect and vested Harmer with the legal title. Stone therefore by his purchase of these lots on execution in 1803, as the property of Symmes, acquired no right to them either legal or equitable, and no necessity is perceived for the prosecution of the chancery suit against Stone for a release of the legal title. This suit, however, and the proceedings under it, can in no sense impair the title of the plaintiffs. At most, these proceedings were unnecessary, and would seem to have no other bearing in the case than to show the boundaries of the lots. A mistake in the release of Stone cannot, under the circumstances, in any form prejudice the rights of the heirs. They gave no assent to the release, in a form which could bind them to take other land than that contained in the deed of Symmes.

The defendants then prayed the court to instruct the jury "if they believe upon the whole evidence, that Mrs. Harmer, the next friend of the minors, in prosecuting the bill in chancery and obtaining the decree given in evidence authorized George W. Jones to obtain the deed of release under the decree, and take possession of the lands, and that George W. Jones under this authority, as agent for the complainant, obtained the decree, and in conjunction with the attorney for the complainants, who obtained the decree, assented to the location of the ground, and that the agent accepted the deed and took possession of the land according to the boundaries described in the deed, the lessors of the plaintiff are concluded by his acts and they cannot recover." This instruction the court refuse to give. Jones was not the regularly constituted agent of the plaintiffs. He acted at the request of Mrs. Harmer, and, as above remarked, he was authorized to do no act which could bind the lessors of the plaintiffs, all of whom were minors with one exception. But, if Jones had been authorized to act as agent, the acceptance of the deed of release under the mistaken impression that it described the lots truly as conveyed by Symmes, would not bind his principals. The defendants further ask the court to instruct the jury that "if upon the whole evidence the jury believe that Mrs. Harmer, the next friend of the minors, in prosecuting the bill in chancery, and obtaining the decree given in evidence, authorized Jones to obtain the deed of release under the decree and take possession of the lots, that Jones, under this authority, in conjunction

with the attorney assented to the location of the ground, accepted a deed and took possession accordingly, and continued his agency after the lessors of the plaintiff arrived at full age, and the defendants purchased before the lessors of the plaintiff disavowed the acts of their agent, and before the defendants had any knowledge of their intention to do so, and no such notice was given by Jones, although public sale of the adjacent lots was made, the lessor of the plaintiffs cannot recover." This instruction is refused for the reasons above given. Mrs. Harmer had no power to appoint Jones an agent to act for the heirs; her powers, as natural guardian were, at most, very limited, and did not extend to the management of the estate of her minor children. The fourth and fifth instructions asked are also refused. It is unnecessary to repeat these instructions, as they are both answered by the want of power in Jones, as an agent, to bind the lessors of the plaintiff; and the fact that Stone acquired no title either legal or equitable to these lots, by his purchase of them, or a part of them, at the sheriff's sale; consequently his release to Kirby, as well as his release to the lessors of the plaintiff, compose no part of the title relied on by the complainants. Stone having acquired no title, could release none by the conveyances executed. Under these instructions the jury found the defendants guilty, and a judgment was rendered for the lessors of the plaintiff, on the verdict.

[NOTE. The defendants then sued out a writ of error, and the supreme court affirmed the judgment in an opinion by Mr. Justice Story, who said that the deed of 1791 passed a legal title to Harmer, which became consummated when his grantor obtained a patent from the United States in 1794. The mother could not, as next friend, authorize any release to be taken during the minority of her children which would bind them. As Dr. Drake had already been used by the defendants as a witness, it was proper to put his book in evidence to explain, qualify, or control his testimony. The plat was evidence, as it had been used by the original proprietor of the whole city, and was recognized by the corporate authorities in making their surveys. It was the best proof obtainable, although not conclusive. 7 Pet. (32 U. S.) 554. See, also, Case No. 6,075.]